UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: JOSEPH AND DEANNE GIACALONE
_____/

JOSEPH AND DEANNE GIACALONE,

        Appellant,                       Bkrptcy No. 05-35632-WSF
                                             HON. DANIEL S. OPPERMAN
vs.                                         Case No. 07-CV-10809
                                             HON. GEORGE CARAM STEEH
CITY OF FLINT,

        Appellee.
_____/

## OPINION AND ORDER
## AFFIRMING FEBRUARY 6, 2007 BANKRUPTCY COURT RULING

Debtor Joseph Giacalone appeals the Bankruptcy Court's February 6, 2007 ruling that $140,000.00 of a loan from the City of Flint he personally guaranteed is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). A hearing on the appeal was held on October 10, 2007. For the reasons set forth below, the ruling is hereby AFFIRMED.

**I. Background**

On August 14, 2002, Joseph and Deanne Giacalone executed a $877,600.00 HUD § 108 loan agreement and personal guarantees with creditor City of Flint on behalf of vinyl window manufacturer OK Industries. The loan consisted of three components: (1) $525,000.00 for working capital under § 108; (2) $295,000.00 for fixed assets; and (3) $57,600.00 for working capital under an Economic Development Initiative ("EDI") program. Under the terms of the loan, the Giacalones promised to relocate OK Industries from Lennon, Michigan to Flint, Michigan, and to hire Flint residents over a three-year period. On March 28, 2005, Genesee County Circuit Court Judge Judith Fullerton entered

judgment in favor of the City of Flint and against the Giacalones and OK Industries for $820,000.00 plus interest owing on the loan.  The Giacalones filed for bankruptcy protection, and the City of Flint responded by filing an adversary proceeding alleging the entire judgment debt was non-dischargeable under 11 U.S.C. § 523(a)(2)(A) due to false representations or actual fraud, and non-dischargeable under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting as a fiduciary or committing embezzlement or larceny.  Deanne Giacalone was dismissed from the adversary proceeding on summary judgment.

Joseph Giacalone and City of Flint Economic Program Manager Glenda Dunlap each testified before the Bankruptcy Court during a bench trial.  On February 6, 2007, the Bankruptcy Judge ruled that:(1) Flint failed to prove non-dischargeability under § 523(a)(4); (2) Flint failed to prove non-dischargeabililty for fraud under § 523(a)(2)(A) as to the $525,000.00 working capital portion of the loan for lack of justifiable reliance in that Flint was aware of Giacalone's difficulties in moving OK Industries to Flint when the parties executed the loan, and because Giacalone made good faith efforts to hire Flint residents; (3) Giacalone properly used $155,000.00 of the $295,000.00 fixed assets component of the loan to purchase machinery and to repair two welding machines.  The Bankruptcy Judge also found that the City of Flint proved Giacalone had misappropriated $140,000.00 of the $295,000.00 fixed assets component of the loan to pay certain contractors as "stipulated to in Paragraph 8 of the stipulation of facts on record," February 6, 2007 Tr, at 16, and that Giacalone "falsely represented to the City of Flint the use of these [$140,000.00] funds in violation of [11 U.S.C. § 523(a)(2)(A)]" Id.  The Bankruptcy Court held "that $140,000.00 which Giacalone personally guaranteed is excepted from discharge under [11 U.S.C. § 523(a)(2)(A)]." Id.  This ruling of non-dischargeability is the subject of Joseph Giacalone's

2

instant appeal.

## II. Standard of Review

A district court applies a clearly erroneous standard to a bankruptcy court's findings of fact, and plenary de novo review as to questions of law. See In re Charfoos, 979 F.2d 390, 392 (6th Cir. 1992); Bankruptcy Rule 8013. A bankruptcy court's findings of fact are considered clearly erroneous if, although the record contains evidence to support the findings, the reviewing court is left with a definite and firm conviction that a mistake has been made. In re Rembert, 141 F.3d 277, 280 (6th Cir. 1998). To prevail on a claim of fraud under § 523(a)(2)(A), the creditor must prove: (1) the debtor made a material misrepresentation known to be untrue; (2) with intent to deceive; (3) that was justifiably relied upon by the creditor; and (4) a proximate cause of the loss. Id at 280-281. Fraudulent intent is judged under a subjective standard, and is ascertained by the totality of the circumstances, including an examination of whether the creditor's conduct was consistent with an intent to defraud. Id at 282.

## III. Giacalone's Arguments

Giacalone argues there is no evidence in the record to support a finding that he did not intend to use the $295,000.00 fixed asset component of the loan to purchase fixed assets at the time he signed the contract on August 14, 2002, and therefore the City of Flint failed to prove any of the elements of fraud: a false representation, known to be false, that was material and relating to a past or existing fact, made with intent to deceive, justifiable reliance, or proximate cause of loss. Giacalone specifically argues that in August 2000, he was told the loan would close on November 10, 2000, and when it did not close, he was forced to apply for extensions and, in February 2001, to borrow $100,000.00 from a private

3

bank. Giacalone maintains that after the loan finally closed on August 14, 2002, only $820,000.00 of the $877,000.00 loan was disbursed through May 2003. Giacalone argues these delays and shortfalls caused him to use all of his operating capital to pay debts before going out of business in 2004, which was the proximate cause of the loan loss. Giacalone points to an FBI investigation finding no fraudulent intent, which Giacalone argues should have been controlling in the Bankruptcy proceeding. Giacalone continues that there was no justifiable reliance by Flint because no credit check was ever made, Flint Economic Program Manager Glenda Dunlap knew of his worsening financial condition, Acting Mayor Darnel Early told Giacalone the loan was likely to default unless restructured, and the Flint City Treasurer stated that "nobody" ever repays HUD § 108 loans. Giacalone further argues that a purchase of real property is a purchase of "fixed assets," and therefore he properly spent the subject $140,000.00 toward refurbishing a building in Flint.

### III. Analysis

The Bankruptcy Judge agreed with Giacalone that the City of Flint could not rely on asserted misrepresentations made by Giacalone of intending to relocate to Flint or to hire Flint citizens because Flint Economic Program Manager Dunlap knew the state of OK Industries when the loan closed on August 14, 2002. The Bankruptcy Judge nonetheless found that Giacalone misappropriated $140,000.00 of the loan's $295,000.00 fixed asset proceeds:

> The City of Flint was lead to believe that Mr. Giacalone would take the $295,000 and purchase the equipment with that money. Ms. Dunlop's testimony was that she continually pressed Mr. Giacalone for details about this loan and the use of proceeds, and that the necessary details were not as forthcoming as the details about the relocation and the hiring process.
>
> In fact, Ms. Dunlap was not shown what equipment had been purchased

with this money until much later in 2003. The court therefore concludes that the City of Flint did rely upon the statements that OK Industries would purchase $295,000 worth of equipment and that the reliance was not only justified, but caused a loss to the City of Flint.

By way of example, had OK Industries actually purchased $295,000.00 of equipment with these monies, that equipment would be available for liquidation . . . .

February 6, 2007 Tr., at 17-18. The Bankruptcy Judge's finding of misappropriation was also based, in part, on Paragraph 8 of a Stipulation of Facts that was expressly incorporated into the record:

8. The fixed asset portion of the loan was used primarily to pay trade and other creditors, not for the acquisition of equipment.

The Stipulation of Facts also reads in part:

4. The Loan was divided into a $525,000.00 working capital loan and a $295,000.00 loan for the purchase of fixed assets.

\* \* \*

10. In 2004, the City of Flint brought suit against OK Industries, Joseph Giacalone and DeAnne Giacalone in the Genesee County Circuit Court alleging a default under the loan documents, case no. 04-78903.

11. On March 28, 2005, Judge Judith Fullerton granted the City of Flint a judgment in the amount of $820,000.00 plus interest and taxable costs against OK Industries, Joseph Giacalone and DeAnne Giacalone, jointly and severally.

12. Nothing has been paid to the City of Flint against this balance by OK Industries or the Giacalones.

Based on Giacalone's testimony that he spent $155,000.00 of the $295,000.00 loan on fixed assets that included two welding machines, the Bankruptcy Judge concluded that Giacalone misappropriated only the difference, $140,000.00. February 6, 2007 Tr, at 16. Flint Economic Program Manager Dunlap testified that the $295,000.00 fixed assets

5

component of the loan was intended to be used for the purchase of machinery and equipment, and that the proceeds of the $57,000.00 EDI component of the loan were never disbursed because EDI proceeds are not eligible for distribution until a loan recipient begins making loan payments. December 12, 2006 Tr, at 12-13. Dunlap testified that neither Giacalone nor his partner Dan Robin were able to produce a complete list of the equipment OK Industries purchased with the loan. Id. at 20.

Notwithstanding Giacalone's arguments that he intended to spend the entire $295,000.00 fixed asset portion of the loan on machinery and equipment at the time he executed the loan, the Bankruptcy Judge could conclude that Giacalone later misrepresented to Dunlap that he intended to use $140,000.00 of the fixed asset disbursements to purchase machinery knowing that the disbursements would instead be used to pay trade and other creditors, intending to deceive the City of Flint into financing general business expenses with fixed asset proceeds, and causing Flint to lose $140,000.00 that could have been recovered had the money been spent on machinery. In re Rembert, 141 F.3d at 280-281. The Bankruptcy Judge was permitted to examine the totality of the circumstances, including Giacalone's conduct after the loan closed on August 14, 2002, in determining that Giacalone's conduct was consistent with an intent to defraud. Id at 282.

The state court judgement and the parties' Stipulation of Facts conclusively shows that Giacalone received a total of $820,000.00 in loan proceeds. Giacalone's argument that an additional $57,600.00 in loan proceeds were not disbursed is consistent with Dunlap's testimony that these funds represent the EDI component of the loan, funds that could not be disbursed because no loan payments were ever made. Consequently, it is

beyond dispute that the $295,000.00 fixed asset component of the loan was fully funded, as was the $525,000.00 working capital component of the loan, totaling the $820,000.00 judgment debt. Dunlap testified that Giacalone was unable to produce a complete list of fixed assets purchased by OK Industries with the $295,000.00 fixed asset loan proceeds, and Giacalone stipulated that "the fixed asset portion of the loan was used primarily to pay trade and other creditors, and not for the purchase of equipment." Giacalone was able to proffer evidence at trial that he purchased $155,000.00 of fixed assets with the loan proceeds, allowing the Bankruptcy Judge to conclude that the remainder of the $295,000.00 fixed asset portion of the loan, $140,000.00, was used to pay general business debts, and not to purchase machinery or equipment. Giacalone's arguments that his refurbishing of a building should be considered a "fixed asset," and that $40,000.00 he used to purchase property on land contract constitutes a "fixed asset" purchase, were not raised below and will not be considered by this court for the first time on appeal.

Giacalone's arguments focus on his intent at the time of contracting. On this record, the Bankruptcy Court could conclude that after the loan closed, but before disbursements were made, Giacalone was "forced" by growing unpaid bills to misappropriate funds he promised to use to buy machinery and equipment to pay these bills, hiding the misappropriations from Dunlap and the City of Flint with intent to deceive. The court has no doubt, as Giacalone argues, that delays and shortfalls in the lending process caused him to use his loan proceeds to pay off debts before going out of business in 2004. The argument of business desperation, however, supports the Bankruptcy Court's finding that Giacalone intended to misappropriate the fixed asset portion of the loan to the City of Flint's detriment, causing the City of Flint to lose $140,000.00 it could have recouped if Giacalone

had purchased fungible equipment or machinery with the proceeds.

Giacalone has proffered no authority, and the court is unaware of any authority, that bound the Bankruptcy Judge to accept an FBI investigation as conclusive on the issues of fund misappropriation and fraud. Giacalone's assertions that no credit check was ever made, that Dunlap knew of the worsening financial condition of OK Industries, that Mayor Early knew the loan would default unless restructured, and that the Flint Treasurer told him "nobody" ever repays HUD § 108 loans, even if true, did not preclude the Bankruptcy Judge from finding that Giacalone acted with fraudulent intent after the loan was approved in misappropriating $140,000.00 of "fixed asset" loan proceeds to pay bills owing to trade and other general creditors.

## IV. Conclusion

This court is not left with a definite and firm conviction that a mistake has been made. In re Rembert, 141 F.3d at 280; In re Charfoos, 979 F.2d at 392. Upon de novo review, the Bankruptcy Court's February 6, 2007 ruling that $140,000.00 of a City of Flint loan Giacalone personally guaranteed is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) is hereby AFFIRMED.

SO ORDERED.

Dated: February 4, 2008

                                       s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 4, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk